FILED

09/27/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0138

DA 20-0138

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 188N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

WILLIAM CURTIS SMALL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC 18-344
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate
          Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
          Assistant Attorney General, Helena, Montana

          Kirsten H. Pabst, Missoula County Attorney, Ryan Mikelson, Deputy
          County Attorney, Missoula, Montana

                           Submitted on Briefs:  August 31, 2022

                                 Decided:  September 27, 2022

Filed:

                    _____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William Small appeals from his conviction after jury trial of the crime of Attempted Sexual Intercourse Without Consent (SIWOC) in violation of Mont. Code. Ann. §§ 45-4-103, and 45-5-503 (2017), challenging an evidentiary ruling by the Fourth Judicial District Court as a violation of his right to confrontation. He seeks a new trial. We affirm.

¶3 On May 27, 2018, Missoula police officers responded to the Missoula County Courthouse on a report of an assault in progress. Two witnesses, Daniel Williams (Williams) and Thomas Machado (Machado) were walking near the Courthouse when they came upon a man and a woman "spooning" in the lawn with their pants partially down. The man, later identified as William Small, was behind and thrusting his hips into the back of the woman. Williams and Machado noticed that the woman appeared to be unconscious, so they approached and tried to rouse the woman, later identified as A.B., by shaking her shoulders and patting her head, but she did not wake up. Machado told Small that A.B. was "passed out" and advised Small to "stop" and "leave," to which Small responded with "leave us alone." Williams testified that, during this exchange, Small and A.B.'s pants were partially down, and he said he could see Small's penis.

¶4    Williams called 911 and reported that a woman appeared "unconscious" and that a man had "got her pants down and they're trying to have relations on the front lawn, here." Williams told the 911 operator they "could not get her up" when they tried to rouse her. Police arrived within five minutes of the call, while the physical interaction between Small and A.B. on the lawn continued. Upon their arrival, Sergeant Kazinsky spoke with Machado and Williams about their report while Sergeant Campbell approached Small and A.B. Sergeant Campbell separated Small and A.B., and unsuccessfully attempted to rouse A.B.

¶5    Sergeant Kazinsky's conversation with Machado was recorded by his patrol vehicle's in-dash video system. The in-dash camera also recorded Small thrusting his pelvis into A.B., and Kazinsky's conversation with Small. After A.B. and Small were separated, Small, without prompting, asked if he was going to go to jail. When Sergeant Campbell responded, "[s]hould you, Bill?" Small replied, "[n]o. I was just having sex with her. Sorry guys."

¶6    Medical personnel soon arrived and attempted to rouse A.B. by calling to her, shaking her, and rubbing her sternum. After about a minute, A.B. woke up, but seemed intoxicated, confused, and unaware of the situation. A.B. was taken to the hospital, where she was tested with a BAC of 0.47 and treated. According to nurse Jessica Martin, A.B. appeared "highly under the influence" and "very sedated."

¶7    The State charged Small with Attempted Sexual Intercourse Without Consent, and the case was first tried in 2018. The State moved for leave for Williams to appear by

3

two-way video. The State cited a work emergency as the reason for Williams's unavailability and proffered evidence about the emergency and Williams's role in responding to it. Small opposed the motion, citing his right to confrontation under the U.S. Constitution and the Montana Constitution. The District Court granted the State's motion based upon findings about Williams's physical unavailability. Machado testified in person. The first trial resulted in a hung jury and was declared a mistrial.

¶8 Prior to the retrial, the State moved for leave to introduce the testimony of both Williams and Machado via two-way video. The prosecutor did not proffer evidence regarding the inability of Williams and Machado to personally appear, stating only that the State "simply cannot physically procure them." Small again objected on confrontation grounds. The District Court overruled the objection, reasoning:

> unlike, quote, the usual situation, whatever that might be, this is not fresh testimony. It's testimony that's already been heard. You've had ample opportunity, in my view, to go over it and look at it, and now you'll even be able to ask more questions than you actually asked the first time.

¶9 Small renewed his objection at trial, but Machado and Williams testified remotely, describing their encounter with Small, A.B., and the police officers. The officers, in person, again testified about their involvement, Small's condition, A.B.'s condition, and the content on the dash-camera recording. The jury returned a guilty verdict. Small appeals, contending his right of confrontation was violated by Machado's and Williams's video testimony.

¶10 This court exercises plenary review of constitutional questions and applies de novo review to a district court's constitutional interpretation of the Sixth Amendment of the

4

United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Mercier*, 2021 MT 12, ¶ 11, 403 Mont. 34, 479 P.3d 967 (citing *State v. Norquay*, 2011 MT 34, ¶ 13, 359 Mont. 257, 248 P.3d 817. The Confrontation Clause of the Sixth Amendment and Article 2, Section 24 of the Montana Constitution provide that a criminal defendant shall enjoy the right to confront the witnesses against him. *Mercier*, ¶ 15. When analyzing constitutional deprivations of the confrontation right, the State bears the burden of proving the error was harmless beyond a reasonable doubt. *Mercier*, ¶ 31 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967)).

¶11    Small argues the District Court erred by allowing the video testimony under the *Craig* standard. *See Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157 (1990); *Mercier*, ¶¶ 17-18. Despite the age of the *Craig* decision and the technologies that have since developed, and recognizing that "*Craig's* continuing utility has been questioned," we have continued to follow *Craig*'s direction regarding the narrow set of circumstances wherein face-to-face confrontation may be relaxed. *Mercier*, ¶ 22. The *Craig* standard requires the trial court to make case-specific findings about the necessity of video testimony and the public policy furthered by that use. *Mercier*, ¶ 26.

¶12    Small argues that the *Craig* standard was not met because the District Court failed to make a case-specific finding of an important government policy necessitating the use of the video testimony. Small notes that the District Court made no case-specific findings, did not articulate the *Craig* standard, and relied on the previous mistrial as a sufficient opportunity for Small to confront the two witnesses. He also argues the error was not

harmless because the tainted evidence was used to prove an element of the crime and was qualitatively significant. The State answers that use of the video testimony satisfied the *Craig* standard, and that, even if error, it was harmless because the State provided additional admissible evidence to prove the essential elements of the charge.

¶13 The fact that the witnesses testified in the first trial and were subject to cross examination finds no authority establishing this as a basis for satisfying *Craig*. The State offered no evidence regarding the witnesses' absence and any attempt to secure their personal testimony, and thus, it appears doubtful the District Court made an adequate finding of unavailability and necessity. However, even if the ruling was error, we conclude in these circumstances it was harmless.

¶14 In analyzing harmless error, we first consider whether the error was structural or trial error, *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, 32 P.3d 735, and have determined that deprivation of the defendant's right to confront is trial error. *Mercier*, ¶ 31. Harmless error review places the burden on the State to meet the two-part *Van Kirk* test. *Mercier*, ¶ 31. We consider whether the tainted evidence was admitted to prove an element of the offense, and, if so, we consider whether the State provided sufficient cumulative admissible evidence to prove the same facts as the tainted evidence, and whether, due to its quality, the tainted evidence nonetheless contributed to the conviction. *State v. Santillan*, 2017 MT 314, ¶ 35, 390 Mont. 25, 408 P.3d 130.

¶15 Both parties acknowledge that a purpose of Williams's and Machado's testimony was to prove the mental state element of the SIWOC charge. The State had the burden of

6

proving the defendant "knowingly" had sexual intercourse with another person without consent or with a person incapable of consenting. Section 45-5-503(1), MCA. Williams's and Machado's testimony indicated that because Machado told Small that A.B. was unconscious, Small was aware of her inability to consent and therefore knowingly had, and continued to engage in, sexual intercourse with another person who was incapable of consent or was not otherwise consenting.

¶16    The defense relies heavily on the information Machado presented during his video testimony, arguing that "none of the other evidence that the State points to on appeal established the crucial fact that *Small was told* [A.B.] was unconscious." (Emphasis added.)  As such, Small argues that the State offered no other evidence to prove that Small was aware of A.B.'s condition, and thus, without this tainted evidence, did not prove the requisite mental state. We conclude this argument is unpersuasive.

¶17    First, a jury "may infer the requisite mental state from what a defendant says and does, and from all the facts and circumstances involved." *State v. Christensen*, 2020 MT 237, ¶ 126, 401 Mont. 247, 472 P.3d 622 (citing § 45-2-103(3), MCA ("[t]he existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense")).

¶18    In *State v. Shields*, 2005 MT 249, 328 Mont. 509, 122 P.3d 421, the defendant was charged with sexual intercourse without consent. *Shields*, ¶ 1.  The defendant argued the victim was not asleep and therefore not "physically helpless," while the victim claimed she was asleep the entire time. *Shields*, ¶ 18. The jury was charged with viewing the evidence,

listening to testimony, and determining the victim's condition based on the totality of the evidence and the credibility of the witnesses. *Shields*, ¶ 19. We held that "any rational trier of fact could have found that the victim was indeed sleeping during the sexual intercourse, and therefore 'physically helpless,' thus establishing that she was incapable of consent." *Shields*, ¶ 22.

¶19 Here, an inference of the requisite mental state from the evidence presented outside of Machado's and Williams's testimony would not have required a strenuous leap. Beyond the tainted evidence, the State provided testimony from both of the officers, video testimony in the form of the in-dash video, testimony from the nurse who assisted A.B., and photographs taken by law enforcement prior to medical personnel arriving. The officers' testimony described their attempts to rouse A.B. by shaking her and calling her name. Their testimony described what they saw at the scene, including the initial sight of Small and A.B. on the ground while Small was thrusting his pelvis into A.B. The testimony further described their watching medical personnel attempt to revive A.B. The nurse's testimony described that A.B. could not walk or use the bathroom on her own, and it described A.B.'s BAC of 0.47. The dash-cam recording showed Small thrusting his pelvis into A.B., and it showed Small's conversation with the officers as he apologized for having sex with A.B. Importantly, it also showed A.B. lying unconscious on the ground while the officers waited for medical personnel to arrive.

¶20 We conclude the State presented more than sufficient evidence, beyond the testimonies of Machado and Williams, from which a rational jury could reasonably

determine that Small was aware that A.B. was not consenting or was incapable of consenting. Neither did the tainted evidence otherwise inappropriately contribute to Small's conviction qualitatively.

¶21 Small argues that both the 911 call and dash-cam video are inadmissible as hearsay evidence. However, as the State argues, out-of-court statements that may otherwise be deemed inadmissible hearsay evidence are permitted when they are made during an ongoing emergency to enable police to provide assistance. *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266 (2006). Here, Small's actions continued after he resisted the intervention of private citizens, and did not stop until police intervened, extending his crime and the emergency to which officers responded. As such, the 911 call and the dash-cam video were admissible.[1]

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶23 Affirmed.

/S/ JIM RICE

---

[1] This case is readily distinguishable from *State v. Tome*, 2021 MT 229, 405 Mont. 292, in which the court determined that the statements made by the victim to law enforcement and school nurses were in fact testimonial and not protected under the ongoing emergency exception. The court utilized the "primary purpose" test articulated in *Davis* to find that, unlike the situation at hand, the emergency was not ongoing because the victim was no longer in imminent danger, and the purpose of the interrogation was to gather information to be used at later criminal proceedings.

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR